Services, LLC. Ms. Droste. Droste, thank you. We'll be glad to hear from you. Thank you, Your Honor. May it please the Court. My name is Megan Droste and I represent Appellant Terri Smyth-Riding. We are here today because the District Court, as it acknowledged was I will discuss today, the District Court made the mistake it so readily admitted was possible for three reasons. First, the jury should have been permitted to consider Ms. Smyth-Riding's claim of sex discrimination because there was more than one reasonable inference that would have permitted the jury to conclude that Appellee's fired Ms. Smyth-Riding because of her sex. Second, the jury should have been allowed to consider Ms. Smyth-Riding's claims of retaliation because there was more than one reasonable inference that would have retaliated against Ms. Smyth-Riding. And third, the District Court improperly weighed evidence and drew inferences in favor of Appellee's throughout its consideration of Appellee's motion for judgment as a matter of law. Turning first to Ms. Smyth-Riding's claim of sex discrimination, there was sufficient evidence that would have permitted the jury to conclude that Appellee's discriminated against Ms. Smyth-Riding when they fired her and did so based on her sex using either the McDonnell-Douglas pretext analysis or a mixed motive analysis. Turning first to the pretext analysis, there was sufficient evidence to establish a prima facie case. There's no question that Ms. Smyth-Riding is a member of a protected class and that she suffered an adverse action. Additionally, the jury could have concluded that Ms. Smyth-Riding was meeting the expectations of her employer based on evidence such as the December 2008 performance evaluation. And fourth, the jury could have concluded that Ms. Smyth-Riding was replaced by a male subordinate employee based on evidence such as the testimony from General Castro that Mr. Boyette took on Ms. Smyth-Riding's duties after she was fired and the email that was in the record from General Sinclair stating that Matt, the HR guy here, will run HR for the entire company. Appellees have argued that Ms. Smyth-Riding should be barred from prevailing on this claim because of the same actor inference. However, the same actor inference is not an absolute bar on recovery even if the court were to conclude that it applied. As this court held in Proud V Stone, there are limitations on the application of that inference. Well, let me ask you this. In your brief statement of facts section, you listed many activities that might be considered protected. I can't really tell from the record what activities you claim are protected. Yes, Your Honor. There are several instances of protected activity or there's evidence that the jury could have found there were several instances of protected activity including Ms. Smyth-Riding speaking out against the improper questions that Dr. Persaud asked a female applicant about her family status and whether she was planning to have children. And that interview occurred sometime in December 2008. A mom for What does that have to do with discriminating against her as a woman? I mean, they hired her. Yes, Your Honor. Judge Floyd was asking about the protected activity. We are not alleging that Dr. Persaud's improper questions of an applicant were evidence that the appellees fired Ms. Smyth-Riding because of her sex. We're alleging that that is sufficient evidence that would have allowed the jury to conclude that Ms. Smyth-Riding engaged in protected activity. Additional instances of protected activity include Ms. Smyth-Riding speaking out against the direction to her that she only consider young female applicants for the receptionist position. And while appellees have argued that age and attractiveness are not covered by Title VII, they cannot argue that sex is not covered by Title VII. And if the employer is only considering female applicants, they're therefore excluding the male applicants because of their sex. So this is going to your retaliation claim or your instances of protected activity go to the retaliation claim. For the sex discrimination claim. You started with sex discrimination. Yes, Your Honor. Don't confuse us, please. It seems to me, according to Judge Floyd's reasoning, you might get through the McDonald test. You might even survive. The defendant didn't raise his burden. And then your ultimate burden is really the question here. Have you shown evidence that based upon her membership in a protected class, she was fired or discriminated against here? And that's the problem. The problem you have is you have good, generalized information. But in the context of the cases, you need more than generalized information that, well, this is it. So it seems to me you could probably say she was fired not based on the fact that she was a woman, but because she was a woman who happened to complain about unlawful harassment practices. That seems very generalized to me. In other words, she complained. It could have been anybody that did that. It was the complaining about the practice, not the fact that she was a woman. Your Honor, we've asserted that it is both because she was a woman and because she engaged in protected activity. You can assert it, but you've got to give us some facts. Yes, Your Honor. Other than you asserted. And I understand you asserted, but there's nothing here to say that she was the woman and that was the reason that she was discriminated against. She complained. That's what seems to be the crux of this. She happened to be a woman who complained. Your Honor. That's not converted to a sex discrimination case. Your Honor, the evidence of the sex discrimination, again, there's sufficient evidence to find that Ms. Smith-Wrighting established that prima facie case and then return to the pretext evidence. And the jury could have found. I'm on the ultimate version that she has on the sex discrimination, which is a little different than the ultimate version on the retaliation on the sex discrimination. Even this ultimate version here is what we're talking about. Yes, Your Honor. And the jury could have found that ultimate burden was met from the evidence that was introduced at trial. As the Supreme Court held in Reeves v. Sanderson, a prima facie case plus evidence that the stated reasons for the action are unworthy of credence is sufficient to allow a fact finder to find that there was discrimination. There need not be any additional evidence. And the court also said that in St. Mary's Honor Center v. Hicks. Tell us about, obviously there are limits to this, I don't know what type of defense you'd call it, but the same decision maker hires and fires. Tell us why that doesn't apply here. Yes, Your Honor. The same actor inference as stated in Proud v. Stone by this court is limited, or applies, excuse me, when there's a relatively short period of time between the hiring and the firing. In Proud v. Stone, that relatively short period of time was only six months. You're talking retaliation here? No, Your Honor, I'm talking the same actor inference that would apply. Retaliation or are we talking sex discrimination? Appellees have asserted that the same actor inference bars Ms. Smith-Wrighting for recovering on her sex discrimination claim. Because Dr. Lee, in their assertion, both hired her and fired her and therefore would not have done so if he had a problem with having a woman in that position. This court also limited the application of the same actor inference. I mean, are you saying there's a per se rule on this that establishes a time limit of six months or 12 months? Because, you know, colloquially, isn't it 18 months, wasn't that how long she was there? Yes, Your Honor. That's not been so long a period of time. No, it's more than the six months, Your Honor, but also as this court held in Proud v. Stone, the plaintiff, even if there is the application of the same actor inference, the plaintiff is still potentially able to prevail if the plaintiff introduces sufficiently compelling evidence of pretext. And that's what happened in this case. There was sufficient evidence that the jury could have found pretext from. Well, the judge's answer at the bottom of his decision was that you couldn't connect the dots, no proximate cause. In part, Dr. Lee, the record shows he didn't know anything about these things. And so how can he be charged with that? Your Honor, we respectfully submit that Dr. Lee did know and that the evidence would have allowed the jury to conclude that. For example, Dr. Lee himself testified that he was aware that Ms. Smith-Riding had complained that a senior manager had asked inappropriate questions during an interview and that he specifically said that her complaint about that was that there was a violation of a regulation. The jury could infer he meant Title VII by that. And while appellees have said that Dr. Lee did not mean Dr. Prasad, that was a jury question. It's for the jury to determine which of these two people is credible. Was she referring to herself or to somebody else? She was referring to someone else, Your Honor. She was referring to... Who was hired. I'm sorry, Your Honor? Who was hired. Yes, that applicant ultimately was hired for that position. The jury also could have inferred that Dr. Lee had knowledge based on Dr. Lee's testimony that Ms. Smith-Riding's performance suddenly went from good to very poor sometime in her last year of employment, which is when she was engaging in the protracted activity. So the jury could have inferred knowledge on behalf of Dr. Lee. They also could have... How does that inference work? How do you connect the dots from her complaining to him? That's what I think is the big gap here. Sure, Your Honor. The gap is closed by the fact that Dr. Lee was no longer Ms. Smith-Riding's first-line supervisor during that time and testified that he was rarely in the Maryland location during that time period. Also, Ms. Smith-Riding's first-line supervisor, who was in the best position to evaluate her performance, specifically said that she was performing well. So from that, the jury could have inferred that the problem with Ms. Smith-Riding's performance from Dr. Lee's perspective was her protracted activity. The jury also could have found causation through the temporal proximity of... I'm sorry, but you've lost me on how you could infer he knew about protracted activity from that. From the comment about her performance? Because Dr. Lee had nothing to base his belief of her performance on but her protracted activity. Again, there's no question that her supervisor believed... I thought there was evidence that it could have been subterfuge, but that a couple of her fellow employees had complained that she was something of a rabble-rouser or something along that line. How does that prove that there was some wink-wink, nod-nod that he was supposed to have had it communicated to him that this was all about her complaints over Title VII? So the comments by Mr. Daniel Joe go to not Dr. Lee having specific knowledge of the protracted activity, but rather go to the cat's paw argument. Under the cat's paw argument, the employee with the animus does not need to say to the decision maker, this person engaged in protracted activity. They need only say something that causes the adverse action. In this case, Dr. Lee testified that Mr. Joe told him that Ms. Smith-Riding was riling up employees, was angry, and that Mr. Joe had retaliatory animus because the conflicts between Mr. Joe and Ms. Smith-Riding entered on Ms. Smith-Riding's protracted activity in relation to Mr. Joe, speaking out against his... What status would Mr. Joe have to have in order for that theory to apply? So you have to be a supervisor or it can be anybody? Your Honor, under the Supreme Court's ruling in Staub v. Proctor, he does not need to be a supervisor. The Supreme Court in that case specifically noted in a footnote that they were not addressing whether or not it could apply to a coworker. Moreover, the court focused... But in Staub, it applied to a supervisor. And I think all of the discussion in Staub goes to supervisors, doesn't it? It does, simply because those were the facts of that case. But again, if the court wanted to limit the application of CACPA only to supervisors, there would have been no need to include the footnote stating that they were not passing judgment on whether or not it would apply to coworkers. The problem I'm having, at least in terms of your argument, that is the confluence of the sex discrimination issue with the retaliation one. Sex discrimination, the ultimate burden is different. The ultimate burden in retaliation is to deal with a but-for causation type situation, which exists within the private-facing case. So you've got to show the but-for causation in retaliation. At least in so far as the sex discrimination, I'm having some difficulty in agreeing with you that that was based upon, that the discrimination was based upon a membership in a protected class of the woman. Then you move to the retaliation, and you're dealing totally different retaliation, and you get into this but-for. Let's go ahead and deal with the Donald Douglas situation here, and then deal with the fact that the ultimate burden plus the but-for causation is necessary to prove the private-facing case. It seems like there is some overlap there. That's where you get in cat's paw. You get into all this other thing there. And your connection, at least the district court problem was, Dr. Lee didn't know about this. And your argument has to be, there's evidence. Dr. Lee, it may not be direct evidence, but there's circumstantial evidence. Dr. Lee knew about this stuff. I mean, he's the one that's coming back, firing her. He's coming back, telling her, well, you're just not working out. Well, why are you not working out? There's something that's going on here. And all of these statements, even whether it's with his son, with Joe or Serino, they are communicating. And there's differences and inconsistencies. Joe and Serino and others are saying, well, it's not your performance. Dr. Lee says, yes, it is. So you've got those kind of facts. All you've got to show, because this is a judgment as a matter of law that took it from the jury, all you've got to show, you may actually lose this case. What you have to show is there is at least one other reason this thing could have been gone to the jury. That's all. You've taken on a burden here that's taking your case to another level. I mean, if you get all hung up on all this, you need to focus on what was given here. This judge let an entire trial go, got ready to send it to the jury and says, judgment as a matter of law. There's a very high burden at that point to be able to say that case should not go to the jury. That's the focus I've been waiting to hear from you. What's that one thing that would give the jury the basis to go there? And if you don't get there through direct evidence, you need to come forward with circumstantial evidence, which can be the basis to show what will causation, what proximal cause, and the ultimate burden under retaliation. I don't think you can get there under sex discrimination. I'm just telling you straight up, so maybe you want to go back and think about how you can pull me there, but I don't think you can get there. I see that my time has concluded. May I respond, Your Honor? Your Honor, it is correct that we need only establish that there is a reasonable inference that the evidence is susceptible to more than one inference. And the district court improperly revealed that there was only one inference. For example, in stating that the conflict between Ms. Smith-Riding and Mr. Joe, the district court specifically said that the only reasonable inference about the nature of that conflict was that Mr. Joe ticked off, in the district court's words, with Ms. Smith-Riding for trying to run his department. And the jury could have concluded that instead, the conflict between Ms. Smith-Riding and Mr. Joe was because Ms. Smith-Riding was engaging in the protective activity. And in regards to Your Honor's point about the sex discrimination, the conflict between... Retaliation. I mean, we'll stick with that retaliation. That's a big point. Yes, Your Honor. And in terms of retaliation, again, the jury could have inferred from the evidence that Dr. Lee had knowledge, based on his testimony, that he knew that Ms. Smith-Riding, in his words, disciplined the company for having a senior manager ask inappropriate questions that violated the law in an interview. That there should be no weighing of credibility at the time of the consideration of a motion as a judgment of a matter of law. So therefore, the jury could have found that Ms. Smith-Riding was credible when she said that that instance, the instance with Dr. Persaud, that that occurred sometime in December 2008, and then it was a month or perhaps less than a month before the adverse actions in this case. So from that, the jury could have found that there was an inference to be drawn in Ms. Smith-Riding's favor that Dr. Lee had knowledge. Thank you very much. You've got some rebuttal time. Mr. Haddad, is that correct? I've got one out of two. May it please the court, Ziad Haddad, representing the FLE's SCS LLC, or Science and Engineering LLC, and Dr. Heosang Lee. The main issue with this case is that the dots were never connected. Dr. Lee, I think it's unquestionable, I think it's undisputed, that he was the ultimate decision maker. He both hired her and he fired her. And at the end of the day, it was the plaintiff's burden to establish that her sex, in terms of her sex discrimination claim for her termination, that her sex motivated his decision in some fashion. And there was no evidence of that. Move to the retaliation, then you can come back to that. I'm really keenly interested in the retaliation aspect of it. In the but-for causation, you can get beyond predominance. We could spend time talking about protective class adverse action and all that. That's wonderful. But it seems to me the crux of this case comes down to the but-for causation, the prospect of causing the ultimate plaintiff's burden, if you would come back and rebut it. And that's when you get into the cat's paw, when you get into all the indirect evidence. So here's a case where the judge said, oh, Dr. Lee never really knew about this. So you got a person who acts who does not know, yet he's in this firm. There's the circumstantial evidence. You got them going, plus, as I understand, she comes in and complains on a Friday. She was fired that Monday. Is that right? No, no. Wasn't there something that happened on the 9th and then the 11th? Right. I can address that. What happened on January 9th of 2009, well, at least what plaintiff claims happened, was that she went and spoke with a gentleman named General Castro. How do we view her evidence? Is it in the light, in favor of her, or not? Yes. So she spoke with him, and what she claims is that what she said to General Castro was that she wanted to be removed the supervision of Dr. Serino. Because? Because she was cerned about the direction she was given related to hiring. He wanted her to do some illegal stuff. Well, that's what she claims. Well, that's all. But she didn't... We got to take that as true. But she didn't testify that that's what she told General Castro, number one. She just said, in her testimony, something to the effect of, I went to General Castro and I said, I wanted to be removed from the supervision of Dr. Serino because I didn't like the directions that were being given to me in terms of hiring. And the issue there is that... And those directions, from what all the evidence I see, is he's telling her, is that he's the one that said you can hire attractive young women, but you can't hire other folks, that sort of thing? Wasn't that sort of the... No, the testimony on that, the testimony on what Dr. Serino was telling her, was that you need to hire somebody who's young. Is it young, attractive female candidates? No, that's not true. That's not her testimony. Her testimony was not that Dr. Serino came to her and said, I want you to hire young, attractive females only. It's not true. The testimony is that he came to her and said, they want somebody that's new to the workforce, somebody that's a high school graduate, that he came to her and he showed her... He tore up his resumes and threw them in the air and said, they're all too old. But all the directions that came from Dr. Serino related to age. What she tries to tie in, in terms of sex, is an inappropriate remark made by Richard Lee at some point in time where he said to her, can't you just bring in chicks so I can hit on them? And so what she's claimed is that some direction was given to her. Meanwhile, it wasn't posed as a direction, but some direction was given to her to hire only a female. But it does seem like her problem in this company was the fact that she didn't... She was an HR person. I don't know much about companies, but that's the kind of person that sort of fits you for hiring. And she's getting this direction on the type of folks to bring into this company. And young, they want to stay attractive or whatever, but there's an atmosphere that says they only want a certain type, a certain age. And then there's a comment that only men, no men should be behind a desk. And so she's a person here bringing folks in and they're telling them, this is what we want out of a couple. Your Honor, at the end of the day, she needs to establish that the decision maker, she needs to establish a causal link just to even get past her claim of... In a retaliation context, the third element of the prima facie case is to show a causal link. And that is done in two ways. That's done by showing that there's some sort of temporal proximity between a complaint and an oppositional act and the adverse employment action. So her termination or her inadequate salary increase. And then the other thing is that it's absolutely necessary that the decision maker know of the protected activity. As I understand her argument, she hasn't made it so much orally yet, but this is what I understood from the brief, was that the son of Dr. Lee and Mr. Joe in particular, had sufficient influence on Dr. Lee to, under the Staub case, influence his decision for improper purposes, even if they never communicated the improper purposes to him. Is that your understanding of the argument? That's my understanding of whatever argument, correct. So tell us why isn't that sufficient, if we take the evidence in the light that was favorable to the plaintiff here, the loser below, why isn't that sufficient to have gotten that to the jury? Well, so that theory is the Katzbach theory, which was addressed in the briefs. There's a couple of requirements for the Katzbach theory to apply. One is that even under Staub, you have to be a supervisor. And you have to have the type of authority to make employment decisions respecting the plaintiff in this case. So you have to have firing authority or be able to make decisions that impact the terms and conditions of her employment. There was no evidence of that, number one, for either Mr. Lee and certainly not for Daniel Joe. The other issue there is that there was no evidence, and there's no evidence in the record, that either of these two individuals, Richard Lee, no evidence that he was involved whatsoever in the termination, in influencing his father's decision with respect to the termination, with respect to the salary, none, nothing at all. With respect to Daniel Joe, there is testimony that at some point in time, he had a conversation with Mr. Lee about agitating employees. Which Mr. Lee? Dr. Lee, sorry. Father? Dr. Lee. Father? Yes, I should refer to him as Dr. Lee because there's Richard Lee, of course. So the argument there is, well, that's evidence that he advised him of a protected activity, but it's not because there's no evidence that that discussion right there had anything to do with discrimination. And it has to do with discrimination. It has to clearly do with discrimination in order to constitute a protected activity under the law. There's also no evidence whatsoever that either of these two individuals had any real influence, were the but-for cause of this decision. And it has to be, because it's retaliation, there has to be some sort of but-for causation. So what plaintiff would have had to show was that, A, both these individuals, or one of these individuals, had such authority as to affect the conditions of Ms. Smith-Ridings' employment, which neither did, number one. And number two, that they exert influence, that they somehow influence the decision, and had they not done so, she wouldn't have been fired. And there's just no evidence of that. Excuse me. So there's a dead end there. There's a dead end. And that's putting aside the fact that all the protected activity that she claims she engage in doesn't constitute protected activity under the law. So at the end of the day, what you have is you have a retaliation claim, where she claims that Dr. Lee, who's the ultimate decision maker, terminated her for engaging or for opposing discriminatory practices, when there's not even a scintilla of evidence that he knew of any of this oppositional activity. And so what the plaintiff tries to do is say, well, at some point at trial, Dr. Lee testified that he felt that her performance was bad somewhere a year after she started. And oh, by the way, that just so happens to be around a time when she was supposedly complaining about certain hiring and firing practices, though not really specifying that she was complaining because it was discriminatory in nature. And so we have to infer from both of those that he must have known, that that must be the reason why he had issues with her performance. And that's just an inference upon inference, Your Honor. And that's the type of impermissible speculation that the courts have warned against in the context of these types of cases. There just simply is nothing to connect any of the complaints. Let's assume that they were complaints of discrimination, and we take issue with that in our briefs, and we've outlined the reasons why we don't think she satisfied the requirement that she proved she engaged in protective activity. But even if that assumption would be that there were complaints of discrimination to Joe and to maybe Richard and others, but not to Dr. Lee. There are certainly, I mean, that's conceded. I mean, that's on the record. There were sufficient facts to infer that Dr. Lee knew about the plaintiff's ongoing conflict with Joe as well as with Richard. This court came in and said, yeah, they knew about these things. They didn't connect the dots, but the conflicts on the record has to do with her complaints to them about the hiring practices. I mean, there's nothing else in the record that this is about, but hiring practices has to do with age discrimination, allegation, or at least to some extent sex discrimination, which I think is a big issue. But in terms of the hiring of individuals, that's what this is about. This is the ongoing conflict that deals with whom to hire and who gets hired. Well, I think that there is... That's conceded, as you say, with Joe and Richard. This court infers that they know about the conflicts. I don't know what other conflicts he's talking about. Well, what the record shows is that Dr. Lee had some idea that there was a conflict between the two. However, to characterize, to say that Dr. Lee knew that conflict had to do with her claiming that... This is between Mr. Joe and the plaintiff? Correct. That's correct. So, I think there is evidence in the record, or at least an inference can be drawn that Dr. Lee knew that there was a conflict between Ms. Smith-Riding and Mr. Jip. However, there's no evidence that he knew that that conflict had to do with her accusing him of discriminatory practices. And in fact... Did Richard tell Dr. Lee that the plaintiff was standing in the way of them hiring a young, attractive person? No. So, that evidence is in the record. It's not, right? You wouldn't find it on JA-16. It's... Just ask. No, I'm sorry. That Richard Lee told Dr. Lee that she... No, there's no evidence of that in the record. That she had been standing in the way of them hiring a young, attractive person. There's no evidence of that in the record. So, if the district court inferred it, then he just inferred something didn't exist. He didn't. In that instance, he did. That's exactly right. As far as going back to the dispute between Ms. Smith-Riding and Mr. Joe, they definitely had disputes about hiring and firing. But the disputes, if you look at the email correspondence between them, which, by the way, Dr. Lee wasn't copied on and were never shown to Dr. Lee at any point. At least as far as the record shows. That email correspondence deals with the process and how the process should work and how much involvement a human resource should have in the how quickly it should proceed. And that was the debate going back and forth. And it even got to the point where I've read that email correspondence and you've characterized that. I assume you would. It's basically a turf battle between the two, whereas opposing counsel says it has some relation to reporting of discriminatory activity. Right. If you look at that, you know, one of the issues that's brought up in that email, one of the first issues is the Zakia Harris termination. And if you look at that paragraph, I think it's one of the first couple of paragraphs. So tell us where you are, counsel. If I may. The appendix is awfully large. I want to say it's page 670. Right. So I think page 670 of the appendix, Your Honor. This is the lengthy email exchange between plaintiff or appellant and Mr. Joe. You know, paragraph two says, as I remember, the company was not okay with your decision to terminate Zakia without my involvement. Not only did Richard get involved, but Dr. Serino, Dr. Prasad, and our attorney were called in because you had already terminated her verbally. We rallied to determine how to best handle go forward strategies. I left that situation clear that you nor any other manager could make or execute a decision to terminate without HR involvement. I guess you didn't leave with that impression. Of course, at trial she claims that this was all about discrimination. And yet her email correspondence with Daniel Joe mentions nothing about discrimination. Now, she does mention Title VII in here, in paragraph four. And this is what the appellant hangs her hat on and says, oh, the nature of the dispute between Daniel Joe and Ms. Smith-Reining had absolutely everything to do with discrimination. But if you read through this paragraph, the main issue that's addressed here is the perception. How could it be viewed? And at the very end, she states, I am certainly not accusing you of anything. Now, how on the one hand can the plaintiff claim that she was engaging in protective activity by complaining about discrimination? And on the other hand, state in an email that she's making no accusations about anything to Mr. Joe. And the testimony on this particular issue was from Ms. Smith-Reining that her real concern here was that he was hiring somebody who was less qualified. And it was not so much having to do with race. But in any event, Dr. Lee, the decision maker, is never made aware of this There's no evidence of it. There's no evidence that it was even whispered in his ear. There's no evidence that he was part of a meeting in which it was discussed. None whatsoever. And so what we have to what the plaintiff is asking us to infer is that someone, in fact, did go to him, did mention well, that number one, this was an issue of discrimination when in fact the plaintiff said she's not accusing him of anything. Number two, that somebody took that to Dr. Lee. And that number three, Dr. Lee made the decision to terminate her because he was retaliating against her for raising this complaint. And so that's three inferences, one on top of the other. And it's the type of impermissible inference stacking that the plaintiff is that the appellant is attempting. Now, I haven't addressed any of the sex discrimination claims and I have a minute left, so I'm just going to do that briefly. Again, the main issue there is you have Dr. Lee, who is both the hirer and the firer. And the sole actor rule definitely applies here, Your Honor. There is a case of Evans, which is ADF 3D 954, it's a four circuit case, in which there was an 18 month gap between the hiring and the firing. And the court applied the same actor rule there. And so there is a powerful inference that there was no discrimination here. But at the end of the day, the ultimate burden is to show that her sex somehow motivated his decision to fire her. And there's just no evidence of that. There's no evidence that he harbored any discriminatory animus towards women, that he ever made any sexist remarks, that he ever condoned any sexist remarks. There's just nothing to connect his decision to her protected class being a female. And unless there are any other questions, that's all I have. Thank you. Thank you very much, Counsel. Ms. Drosty, you have some time left in rebuttal. Let me ask you to start, Senator. I'm sure you'll cover this. If we assume, just assume, that post-stob you would have to have a person of supervisory authority as relates to the plaintiff, what's your best evidence that either Mr. Joe or Richard Lee was a supervisor vis-a-vis the plaintiff? Your Honor, the evidence in the record before the jury was that Richard Lee supervised Ms. Smith's writing at one point during her time with the company. She was directed to report to him when his father was out of the office. She needed to report her leave to him. There was an email that the jury saw that she needed to report her leave to him. And there was also Ms. Smith's writing's own testimony that Mr. Richard Lee remained in her, as she put it, her HR world throughout her time in the company. She constantly was checking in with him about human resources projects and things like that. So there's also the fact that Richard Lee is not only Dr. Lee's son, but himself a part owner of the company and therefore had this extra role beyond just being a financial analyst, but was actually a larger presence in the company itself. But also, Your Honor, this court could conclude that the person involved in the cat's paw action does not need to be the supervisor because again, the Supreme Court did not prohibit that. And then two other circuits have specifically found that a co-worker who possesses that animus can be the person pulling the strings in the cat's paw analysis. And the appellees have focused on the fact that if the court were to consider Mr. Joe or Richard Lee as the ones pulling the strings, that they did not specifically go to Dr. Lee and say, Ms. Smith's writing is engaging in protected activity. But that is not necessary under the cat's paw analysis. They need only take an action that results in the adverse employment action. They don't need to say she's engaging in protected activity. They need to say something that Dr. Lee testified that one of the reasons that Ms. Smith's writing was fired was because she was agitating employees and she was riling them up. And that was knowledge that he got specifically from Mr. Joe. So that is sufficient for the jury to reach that conclusion. What's your best evidence with regard to Mr. Joe that he was in conflict with the plaintiff because of a disagreement over Title VII related issues? The best evidence comes from Ms. Smith's writing testimony during the trial, which the jury could have believed and there should be no credibility determinations made at Rule 50 stage. And Ms. Smith's writing specifically during the questioning stated that her issue with the firing of Ms. Zakia Harris was that it was based on race discrimination. And she specifically testified that she brought that allegation that there was race discrimination involved to Dr. Serino, Dr. Persaud, outside counsel, and ultimately that Richard Lee became aware of that. And she testified that she was discussing this issue with the firing of Ms. Harris with Mr. Joe and is referenced again in the emails that appellees Did the jury get the emails on pages 670 to 679? Yes, Your Honor. They were introduced as exhibits during the course of the trial. Because those emails would seem to contradict her trial testimony. Your Honor, she explained those on questioning as to the statement about that there's no, I'm not accusing you of anything. And as she explained, this was a senior manager who was essentially a member of her everyday interactions that she needed to maintain a good relationship with. So while she wasn't going to open up this line of argument in this email because she's trying to get him to start doing the right thing, there was enough there for the jury to infer that there was retaliatory animus on the part of Mr. Joe because Ms. Smith's writing had repeatedly questioned his hiring and firing decisions, such as the Zakia Harris issue that is in that email. Also, Your Honor, there is clear testimony that Ms. Smith's writing did engage in protected activity as it relates to the Dr. Persaud questioning. Dr. Lee himself specifically testified that she spoke out against a violation of law regarding the questioning. And then there's also the evidence, the testimony, excuse me, from General Castro that Ms. Smith's writing stated that she had been told by Dr. Serino to only consider young, attractive women for the receptionist position. And that statement was again, as Your Honor pointed out, was raised again on January 9th, the last business day before she was fired. So the jury could have concluded that that protected activity led to her termination. And while the appellees have stated that there is a powerful inference from the same actor inference, it is clear from this Court's cases that that inference is not insurmountable. It can be surmounted through sufficient evidence of pretext, and as is laid out in our briefs, that was introduced during the course of the trial. If there are no other questions, thank you very much. Thank you very much. We appreciate the arguments of counsel today, and we're going to ask the Court if she will adjourn court for the day, and we'll come down and read counsel. This Honorable Court stands adjourned until tomorrow morning at 9.30. God save the United States and this Honorable Court.
judges: G. Steven Agee, James A. Wynn Jr., Henry F. Floyd